IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JIMMY MARTINEZ | § | |
| v. | § | CIVIL ACTION NO. 6:15cv732 |
| JEFFREY RICHARDSON, ET AL. | § | |

<u>MEMORANDUM ADOPTING REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>
<u>AND ENTERING FINAL JUDGMENT</u>

The Plaintiff Jimmy Martinez, a prisoner of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants are Coffield Unit Assistant Warden Jeffrey Richardson and Director of Chaplaincy Operations Vance Drum.

**I. The Plaintiff's Claims**

Martinez states that he is a Satanist. He is housed in administrative segregation at the Coffield Unit. His lawsuit sought the opportunity to celebrate and perform Satanic rituals and the right to possess implements he claims are needed for the practice of this religion. These implements include a parchment poster carrying the symbol of Baphomet, a black robe, an altar, candles, a bell, a chalice, a wand, parchment paper, a leather pouch and tarot card. Martinez also asked that the Defendants be directed to recognize the holy days of Satanism, including the date of one's birth, Walpurgisnacht, the summer solstice, the autumn equinox, Halloween, and the winter solstice. Martinez also asked to be allowed to grow a Satanic goatee.

1

Martinez asserted that he was denied due process and equal protection because his faith was treated differently than others, he was denied due process because he submitted numerous requests which were not acted upon and he was not provided with an adequate hearing, the Defendants failed to follow TDCJ rules and regulations, the Defendants' actions violated the Religious Land Use and Institutionalized Persons Act (RLUIPA), and his rights under the Free Exercise Clause of the First Amendment were violated.

## II. The Defendants' Motion for Summary Judgment

The Defendants filed a motion for summary judgment arguing that Martinez's claims for monetary damages are barred under RLUIPA, Martinez lacks standing to seek injunctive relief against Drum and Richardson because they lack authority to redress his injuries, Richardson and Drum are entitled to qualified immunity, and TDCJ's policies are the least restrictive means of furthering compelling governmental interests.

The Defendants offered summary judgment evidence showing that Martinez is a confirmed member of the Azteca Barrio and his confinement in administrative segregation prevents him from attending group worship. They argue that prohibiting prisoners from wearing unique hairstyles and cutting designs in their hair eliminates the opportunity for prisoners to establish an identifying hairstyle or design to show themselves as a member of a particular gang. The Defendants stated that TDCJ now permits the growing of facial hair for religious reasons, but prisoners are not permitted to sculpt their beards.

## III. Martinez's Response to the Motion for Summary Judgment

Martinez argues in response that the fact Richardson and Drum denied his accommodation requests in his HQ-150's rebuts their claim of lack of authority. He contends that the Defendants are not entitled to qualified immunity because of their direct personal involvement with the denial of his right to exercise his religion. Martinez maintains that disputed issues of fact exist, precluding summary judgment and that the denial of his Satanic goatee places a substantial burden on the

2

exercise of his faith. He contends that he need not attend group worship because he can practice his rituals in his cell or in the dayroom.

**IV. The Defendants' Reply and Martinez' Sur-Reply**

The Defendants maintain that Martinez's alleged disputed issues of fact are actually questions of law rather than fact. They again assert that the summary judgment evidence shows that neither Richardson nor Drum are the officials who can change TDCJ policies or grant an exception to the policy restricting administratively segregated prisoners from group religious services. Martinez maintains in response that the responsibilities and job descriptions of the Defendants are disputed questions of fact.

**V. The Report of the Magistrate Judge**

The Magistrate Judge observed that the Religious Land Use and Institutionalized Persons Act does not create a private right of action for damages against prison officials in their individual capacities, and any such claim against the officials in their official capacities is barred by sovereign immunity.

With regard to Martinez's request for injunctive relief, the Magistrate Judge determined that according to the summary judgment evidence, prisoners seeking religious accommodations beyond that provided by TDCJ policy must submit a Request for Religious Accommodation form, known as an HQ-150, on which the decision is made by the Religious Practice Committee. Neither Drum nor Richardson are voting members of the Religious Practice Committee, which has as its voting members the Director of the Criminal Institutions Division or designee, the director of the Rehabilitation Program Division or designee, and the deputy executive director or designee. The committee also has advisory non-voting members including the deputy directors of the Criminal Institutions Division, the deputy director of the Rehabilitation Program Division, the Rehabilitation Program Division Manager IV/Support Services, the Office of General Counsel representative, and TDCJ staff or subject matter professionals who may present information, offer insight on specific

3

issues, and assist in rendering a decision. According to policy, the manager of chaplaincy operations serves as chairman of the Committee but is not listed as a voting member. (Docket no. 40-4, p. 6).

The Magistrate Judge rejected Martinez's assertion that participation by Drum and Richardson in the grievance process gave them the authority to effect the changes sought. Richardson answered a grievance by stating that "the chaplaincy department indicate [sic] that your request will be forwarded to the Religious Programming Division [sic] in accordance with AD 07.30 for further assessment upon completion." (Docket no. 1, p. 28). Drum answered the appeal of this grievance by stating that the chaplain was attempting to verify the religious authority listed by Martinez in his request and that once this was verified, the HQ-150 would be forwarded for further process, presumably to the Religious Practice Committee. (Docket no. 1, p. 30). While chaplains can approve the purchase of religious implements, the Magistrate Judge stated that this refers to items already approved for faith groups, and none of the implements sought by Martinez had been previously approved for Satanism.

Martinez has no liberty interest in having his grievances resolved to his satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). The Magistrate Judge determined that Martinez's assertion regarding participation in the grievance process affording authority to effect change above and beyond TDCJ regulations lacked support in the summary judgment evidence. The fact that the job description for the assistant warden granted the authority to "direct the execution of correctional policy, procedures, rules, and regulations" did not give the assistant warden the power to unilaterally override TDCJ policy. Thus, the Magistrate Judge concluded that Martinez lacked standing to seek injunctive relief against Drum or Richardson under RLUIPA. *See Broussard v. Stephens*, civil action no. 2:13cv211, 2014 U.S. Dist. LEXIS 173266, 2014 WL 7188781 (S.D.Tex., December 16, 2014) (prisoner lacked standing to seek injunctive relief regarding the growing of a beard against defendants lacking the power to initiate or change any TDCJ policy or prevent the enforcement of a policy).

4

Similarly, the Magistrate Judge stated that Martinez's First Amendment claims lacked merit because Martinez failed to show that Drum or Richardson were personally involved in the alleged wrong, in that these defendants lacked authority to grant Martinez the relief sought. Even were this not the case, the Magistrate Judge concluded that adequate justification existed for the denial of Martinez's requested accommodations because the prison's rules and regulations are reasonably related to legitimate penological interests. As a confirmed member of a security threat group, Martinez is confined to administrative segregation and thus prohibited from engaging in group worship. Many of the items sought by Martinez are approved for other faith groups but only when brought onto the unit by volunteers for group observances. The Magistrate Judge determined that Martinez lacked standing to seek injunctive relief directing a similar accommodation for Satanism because even if granted, he could not participate in group observances by reason of his placement in administrative segregation. Furthermore, the summary judgment evidence showed that there were no outside volunteers available to perform Satanist ceremonies at Martinez's prison unit.

The Magistrate Judge stated that the Defendants articulated reasonable bases for refusing to allow Martinez to possess the requested items, including parchment paper, candles, a robe, a bell, a wand, and a chalice, in his cell. Many of these items are not allowed to inmates in general population, much less administratively segregated prisoners such as Martinez. In the event a volunteer is found to conduct Satanist services, the Magistrate Judge stated that prisoners eligible to attend those services could request permission to use these items in congregational worship, but Martinez failed to show a constitutional violation in the fact he could not possess them in his cell.

Likewise, the Magistrate Judge stated that Martinez did not show any personal involvement by the Defendants in the fact that he was not permitted to grow a goatee. Neither Drum nor Richardson could make or contravene TDCJ grooming policies nor carve out a unilateral exception for Martinez. The Magistrate Judge further stated that Martinez alleged that he had not received any disciplinary cases for failure to groom despite wearing a goatee; in any event, Martinez failed to

5

show that had he received such a disciplinary case, either Drum or Richardson could have expunged such a case but would not have done so.

Finally, the Magistrate Judge determined that Martinez had failed to overcome the defenses of qualified and Eleventh Amendment immunity which the Defendants raised. After reviewing the summary judgment evidence, the Magistrate Judge concluded that there were no disputed issues of material fact and that the Defendants were entitled to judgment as a matter of law.

## VI. Martinez's Objections

In his first set of objections and an attached affidavit, Martinez argues that he carried the burden of showing that his religious beliefs were sincerely held and that TDCJ policies substantially burdened this exercise, but the Defendants failed to show that their actions or policies were in furtherance of a compelling governmental interest and were the least restrictive means of furthering that interest. He contends that it is "clearly disputed as to whether the defendants have the ability to enforce statutes or regulations at issue" and whether the Defendants have demonstrated a winningness to enforce that statute or regulation," citing *Okpalobi v. Foster*, 244 F.3d 405, 425-27 (5th Cir. 1991).

In *Okpalobi*, a group of abortion providers sued the Louisiana Governor and Attorney General challenging the constitutionality of a statute making abortion providers liable in tort for any damage occasioned by abortions. The Fifth Circuit held that the providers lacked standing to sue because the Governor and Attorney General did not cause any injury to the providers and could not redress their alleged actual or threatened injuries, concluding that "because these defendants have no powers to redress the injuries alleged, the plaintiffs have no case or controversy with these defendants that will permit them to maintain this action in federal court." *Id.* at 427.

Likewise, the summary judgment evidence shows that neither Drum nor Richardson have the power to redress the injuries alleged by Martinez. Although Martinez asserts that this matter is a disputed issue of material fact, he points to no summary judgment evidence showing or even suggesting that Drum or Richardson have the authority to grant the relief sought, nor that they

6

should be held personally responsible for the injuries Martinez claims to have suffered. Instead, he states that "the evidence does not absolutely make clear that neither Drum nor Richardson cannot be voting members of the Religious Practice Committee, plaintiff further argues he showed in the record (AD 07.30) and other summary judgment evidence that this fact is disputed."

Even were it theoretically possible that Drum or Richardson could be voting members of the Religious Practice Committee, Martinez has failed to offer any evidence that either of the Defendants were ever voting members or were ever likely to be voting members. An inchoate possibility that one or both of the Defendants could one day have the power to redress Martinez's injuries is not sufficient to convey standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Mere conclusory allegations are not competent summary judgment evidence and such allegations are insufficient to defeat a motion a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). This objection is without merit.

Martinez next argues that most of his requested religious accommodations have been previously addressed by the Religious Practice Committee because the policy does not call for the request to be approved for each and every religion individually. He contends that once a particular accommodation is approved, this means it is approved for all religions. Martinez is incorrect in this regard; Chaplaincy Manual 05.01 (docket no. 40-5, p. 3) states that "a TDCJ offender is permitted to possess only approved religious devotional items appropriate for the faith preference as identified on the offender's travel card and the TDCJ computer database." Martinez points to no authority for the proposition that a particular accommodation granted to members of one religious faith automatically extends to all other faiths. *See, e.g.*, *Fisher v. McGinnis*, 238 F.3d 420, 2000 WL 1828486 (6th Cir., December 5, 2000) (upholding grant of summary judgment on complaint that defendants refused to allow plaintiffs to possess several items that inmates practicing other religions are permitted to possess). Martinez's contention that certain worship implements previously approved for a religious faith called Thelema are also "appropriate" for Satanism is just the sort of

7

matter which should be approved by the Religious Practice Committee, and neither Richardson nor Drum are voting members of this committee and lack the power to give approval for these items to be used in Satanism. Martinez's objection on this point is without merit.

Martinez next argues that as Director of Chaplaincy Operations, Drum is a voting member of the Religious Practice Committee. The list of voting members of the Religious Practice Committee includes the Director of the Criminal Institutions Division or designee, the Director of the Rehabilitation Programs Division or designee, and the deputy executive director or designee; it does not include the Director of Chaplaincy Operations. (Docket no. 40-4. p. 6). Drum states in his affidavit that he is not a voting member of the Committee and does not investigate requests for religious accommodations, but forwards and introduces requests to the Committee. (Docket no. 40-12, p. 1).

Martinez offers no controverting summary judgment evidence. Instead, he asserts that Drum claimed to be Director of the Rehabilitation Programs Division, and thus is a voting member of the Committee. A review of Drum's affidavit does not confirm that Drum claimed to be director of the Rehabilitation Programs Division; rather, this affidavit states "I have been in my current position as Director of Chaplaincy Operations in the TDCJ's Rehabilitation Programs Division since September 15, 2014." The Department of Chaplaincy Operations, of which Drum is director, is one part of the [Rehabilitation Programs Division](), of which the Director is Madeline Ortiz. Martinez has failed to show that Drum is a voting member of the Religious Practice Committee. His objection on this point is without merit.

In Martinez's second set of objections, he argues that neither the Religious Land Use and Institutionalized Persons Act nor the First Amendment differentiate between the requirements for religious accommodation for a group as opposed to an individual. The Magistrate Judge observed that many of the items sought by Martinez are approved for other faith groups, but only when brought by volunteers onto the unit for group observances and taken back off the unit when the ceremony is completed. This Court has held that TDCJ policies prohibiting access to communal

8

services to prisoners in segregation is reasonably related to the compelling state interest of maintaining security in that inmates in segregation are placed there because they pose a danger to others or are in danger from others. *Ramon v. Dretke*, civil action no. 9:10cv158, 2012 WL 760854 (E.D.Tex., January 3, 2012), *Report adopted at*, 2012 WL 76168 (E.D.Tex., March 8, 2012). Nor is there any constitutional violation in the fact that certain implements of worship are only permitted when brought by volunteers onto the unit for use in group worship ceremonies. In any event, neither Drum nor Richardson were personally responsible for or have the authority to contravene these policies or to grant Martinez a unilateral exception. This objection is without merit.

After stating that he is strip searched and his clothes checked before exiting a cell, rendering it impossible for him to conceal contraband under a robe, and that he would never think of throwing liquids on a correctional officer, Martinez asserts that he has had a pack of tarot cards in his possession for over a decade and has never misused them. These objections fail to show that Martinez has standing to seek relief against Drum or Richardson and are without merit.

Next, Martinez states that he objects to the denial of a Satanic goatee because the Defendants are infringing on a contract between himself and Satan and they can be ordered to cease and desist from carrying out the allegedly unlawful policy or can be ordered to officially request that the policy be revised. The Magistrate Judge correctly determined that Martinez lacked standing to seek injunctive relief against Drum and Richardson because they lacked power to grant the relief sought and thus it is no more than speculative that the alleged injury could be redressed by a favorable decision. contract *Lujan*, 504 U.S. at 561. While Martinez is free to make a contract with Satan as per his religious beliefs, the terms of any such contract remain subject to applicable state laws, including the rules and regulations of the state penitentiary. This objection is without merit.

Martinez maintains that the Warden has discretion to adopt specific unit-only policies and the Defendants can be ordered to do so. He points to nothing in the summary judgment evidence indicating that an *assistant* warden, such as Richardson, can adopt unit-specific policies which directly contravene established TDCJ rules and regulations. This objection is without merit.

The Magistrate Judge stated that "while Martinez seeks an image of Baphomet on parchment, the summary judgment evidence shows that he is permitted to have an image of Baphomet on a medallion, and he offers no basis upon which to conclude that this is not a reasonable alternative." In objecting to this determination, Martinez states that it is "impracticable to insinuate" that a medallion bearing the image of Baphomet can substitute for a parchment poster bearing the image of Baphomet, citing a passage from a book called "The Satanic Witch" stating that a practitioner's ability as a witch has nothing to do with how many pounds of amulets are worn because the only purpose served by an amulet is "as a reminder of what you want or represent." An amulet can therefore give constant reminders of the practitioner's role but such constant awareness will accomplish nothing unless the practitioner has "whatever other devices and actions necessary to go with it." This passage offers no basis upon which to conclude that the Report of the Magistrate Judge was in error. Martinez's objections are without merit.

## VII. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 74) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the Defendants' motion for summary judgment (docket no. 40) is **GRANTED** and the above-styled civil action is **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that any and all motions which may be pending in this action, specifically including but not limited to the Plaintiff's motion for summary judgment (docket no. 54) and motion for preliminary injunction (docket no. 39) are **DENIED**.

**So Ordered and Signed**
**Feb 8, 2017**

_____
Ron Clark, United States District Judge